Case 22-6118, Starlink Logistics Inc v. ACC LLC et al., argument not to exceed 15 minutes per side. Counsel, you may proceed for the appellant. Good morning, Your Honors. May it please the Court, I'm Matt Blickenstrafer on behalf of the appellant, Starlink Logistics Inc, or S-L-L-I for short. I'd like to reserve three minutes, Judge Clay. Your Honors, the basic statutory prerequisites for Clean Water Act and RCRA citizen suits are notice and a waiting period. If the EPA or a relevant state agency has filed an enforcement action in a court and is diligently prosecuting it, then the citizen suit cannot be filed. Otherwise, the citizen suit may proceed after notice and the waiting period. Whatever the EPA or relevant state agency has done short of commencing and diligently prosecuting an enforcement action in a court will not block the citizen suit. It may affect the merits of the citizen suit or the relief available in the citizen suit, but it will not block it. S-L-L-I met these statutory prerequisites for filing this citizen suit, Your Honors. It served a notice, it waited for the statutory waiting period, and then it filed this action after no enforcement action was filed during the waiting period. The district court erred in holding otherwise. Its error was driven by an incorrect analytical framework to this case or for this case. Instead of beginning by assessing whether this case met the citizen suit prerequisites in the federal statutes, the district court went to the merits first and looked at claim preclusion. It concluded that a 2012 administrative consent order issued by the Tennessee Department of Conservation, of Environmental Conservation, excuse me, or TDAC, barred all claims prior to that 2012 administrative order under the doctrine of claim preclusion. From that conclusion, the district court then held that S-L-L-I's so-called post-consent decree order claims required a new notice, a new waiting period, and a new lawsuit, even though the original notice covered the same types of claims that continued. Isn't there a dispute as to whether the post-2012 consent order claims are the same claims or new claims or a further development beyond the claims that were addressed in the consent order? I think the district court treated them that way, Judge Clay, but we would submit that that was an error by doing so. And the reason is because the claims challenged a continuing state of affairs, namely, in the instance of some of the claims, pollution levels above allowable limits. In the instance of other claims, by way of example, sediment that had been run off or diverted onto S-L-L-I's property from ACC's property. So there was nothing, in response to your question, Judge, there was nothing different about the nature of the claims after the 2012 administrative consent order than before. Isn't that factually disputed as to whether the continuing pollution was the same or different runoff or rainwater or debris pollution under the landfill that occurred after 2012? As I understand, there's no agreement amongst the parties as to whether that was the same or continuing environmental problem that occurred prior to the consent order. If that's factually disputed, how does that fact as to whether those were the same claims or not, how does that figure into your analysis? I would make three points in response to that question, Judge Clay. First, if there was a factual dispute about that, and I don't believe there was, but if there were, summary judgment could not have been properly granted on the basis of claim preclusion, which would have been the basis for the treatment of pre versus post consent decree claims would have been the basis for the claim preclusion. But wait a minute, there were a series of claims and they were not all the same. Some claims may be precluded and not others. I believe there were five counts here that Starlink specifically alleged against ACC and some of them went to management of the solid waste, violations of postal landfill closure requirements under Tennessee state law, discharging of field material. I mean, these counts were not identical in nature and maybe some would be precluded and some not. We concede that there was some preclusive effect here, Judge Clay. We concede a preclusive effect on claims 1, 3, and 4 prior to the 2012 administrative consent order because those claims could have been addressed in the agency proceeding. What we do not concede is any preclusive effect on counts 2 and 5 because TDEC could not have addressed those claims at any point. And we also do not concede, and the district court agreed with us on this latter point, any preclusive effect for violations after the 2012 consent order. Getting back to the fundamentals of your question, Judge Clay, another point I would make to you is that whatever factual dispute exists about what the claims are is really at its base a dispute about the quantum of the violations, not the fact of the violations. It is true that the level at which the violations are occurring has gone from many, many multiples above the legal limits to a few multiples above the legal limits. You know, I'm not quite following you there because they're all sort of in the same basket because the Clean Water Act has certain specific provisions and this RCRA and Tennessee's environmental requirements, there are a bunch of different statutory requirements. They don't all, we wouldn't look at all those as one transactional situation, would we? Well, the nature of the claims is they really fall into two buckets. Hopefully this will help, Judge Clay. The first bucket are claims directed at stopping the ongoing pollution from ACC's property. That would be counts one under the Clean Water Act and counts three and four under RCRA. The other bucket of claims are those claims aimed at addressing the damage as a result of the migration of the pollution onto SLLI's property. And those are counts two of the Clean Water Act and five under RCRA. So, yes, the claims are different. There are two buckets that attack different issues, one being the ongoing pollution from ACC, the other being the remaining harm on SLLI's property. The other point I would make in connection with this dialogue that we're having right now is that these are issues that the district court hasn't reached. The merits of these claims and because all of that has been pretermitted by what we believe are the errors in the district court's analysis. Can I provide any further information on this subject for you, Judge? Well, I'm leaving that to you. It's your argument, so if we have a question, we'll ask you. Very good. Now, what about this mootness argument? Is that something that we would need to address in a ruling? I would suggest it does need to be addressed only in the sense that the district court relied on it as an alternative holding. We believe that is a fundamental error and should be reversed along with the part of the judgment that should be reversed. The case is not moot for multiple reasons. First, the evidence establishes, Judge Clay, that the pollution is ongoing. As I mentioned, the quantum of illegality has been reduced over time, but what the evidence shows is that the pollution that has originated on ACC's property and migrating to SLLI's property remains several times above the legal limits. So there is still ongoing pollution, and in that sense, the case can't be moot. Another reason the case can't be moot is that absolutely nothing has been done to address the pollution, the harm that has been caused by the pollution on SLLI's property. That remains. The environmental damage on SLLI's property has not been addressed. And so in that sense, there's still an injury needing to be remedied here. And so in that case, the case can't be moot either. The mootness argument adopted by the district court was based on the closure of the original landfill and relocation of the waste to a different part of SLLI's property. That doesn't make the case moot for two additional reasons, Judge Clay. The first is we believe the evidence will clearly show that the original landfill is still leaching pollutants because it wasn't closed property. The second reason that can't make the case moot is that at a fundamental level, it doesn't matter for purposes of the claims where on ACC's property the pollution is coming from. It only matters that they're polluting above the legal limits and that there is harm as a result to SLLI's property. So nothing has been done here to address the harm to SLLI's property. And until and unless that occurs, this case is necessarily live and not moot. Okay. How do we determine? It would seem that the consent order could not govern or bar future pollution that arguably is not addressed in the consent order. So how do we go about assessing and determining what future environmental impact there might be that would be outside the purview of the consent order? What sort of criteria would we use for assessing that? I was about to say one thing and then I thought that probably is not answering exactly what you're asking, Judge. So forgive me if I don't hit it on the head and I'll give it another try. But I think the answer to your question is that those prerequisites or those standards are coming from the federal statutes under which we're suing, the Clean Water Act and RCRA. And what we would look to is does the consent order from 2012 require compliance with the permissible legal limits of the NPDES standards in the Clean Water Act by way of example using Count 1 of the complaint? The answer is no. The consent order does not require compliance with those NPDES standards. So there is an environmental harm, a clear illegality there that has not been addressed and continues to this day under Count 1 simply by way of example. So I would say that the answer to your question is we look to what the federal statutes require. Has that been resolved or addressed by the 2012 consent order? The answer is no. Those violations have not been addressed. I didn't have a question, but now I do. Because if that's your position, then it seems to me, I mean, what you said at the outset is that this is an ongoing thing and that's why we didn't require any new notice because this has been going on throughout. But what I hear you saying now is that because the standard that was required in the consent order in 2012 was set at a point where that's not even what we're talking about now, then if your position is that this is an entirely new violation, so to speak, even though it's been ongoing, but it's new because it's not meeting some other threshold, why wouldn't that then circle us back to actually requiring notice because you're talking about something specific. You're talking about a violation that has to do with the statute and what you expect under the statute. I understand the question, Judge, and hopefully it has come from my not being as articulate as I should be. The complexity of cases like this and why these cases are hard is because we've got the overlay of state law preclusion on top of the federal statutory prerequisites. Our point is that for looking at whether the citizen suit is viable in the first instance and whether it may be maintained, we look solely to the federal statutes for that. We surmounted those hurdles, the lawsuit was valid when it was initiated and may be maintained. Then we have the state law overlay. What happens when a state agency acts after the valid citizen suit has been filed? That's where preclusion doctrines may come in and have some impact on the claims, and that's why we concede a partial impact on the claims here. But that issue doesn't somehow get morphed onto the federal statutory framework, which we surmounted at the beginning of the lawsuit. So to the extent I'm arguing for different analyses, it's because there's a federal statutory framework and then there's a state preclusion framework that has to come in. And the analyses are different for the two of them. All right, thank you very much. Good morning, Your Honors. It's a privilege to be here. Thank you. My name is Sharon Jacobs, and I'm here with my co-counsel from Columbia, Tennessee, Corey Bloodsoe-Jones. May it please the Court, I'm here on behalf of ACC LLC, and I'd like to give you just a brief 3,000 feet above picture. This landfill was started in the 1980s, closed in the 1990s. It was in compliance with all laws and regulations at the time. In fact, TDEC, it was formerly the Tennessee Department of Health and Environment, chose this site because it had been a former phosphate mine site and thought it was a good reuse, because what else are you going to do with that at the time? In fact, ACC bought this property from SLI's predecessor and put a landfill on it and put a clay liner and complied with the law. After a few years, it was determined that there was chloride and ammonia leaching out of it. Chloride was also on the adjacent properties in ammonia from different manufacturing things that had gone on over there. So Arrow Lake had historically had some chloride in it. They tried some very environmentally friendly things like creating wetlands to absorb things and all that. We had a drought in Tennessee, and it didn't work. Finally, in about 2010, TDEC said, enough. We've had enough. You're going to have to do something drastic. It's going to cost you a lot of money. ACC said, we want to do the right thing. So they negotiated a settlement in 2011 that said ACC would dig up a permitted landfill and move it away from this location. In that 2011 order, it was public noticed. It was sent to SLI as an adjoining property owner. Then it was filed. We filed it. ACC did, which is allowed under the statute in Chancery Court in Davidson County for a judicial review. SLI, in July of 2011, intervened in that matter and objected to it. Eventually, that objection led to the remand of the 2011 order to the board. The parties tried to work out a settlement. That didn't happen. By August of 2012, SLI, ACC, and TDEC had a contested case hearing before the Solid Waste Board. That ended up with the 2012 consent order that we keep talking about here. It's a final board order. It was approved by the board. SLI and ACC and TDEC put on evidence, put on witnesses. In fact, SLI objected to the proposed consent order and got two things removed out of it because they didn't want them in there. One of those was forcing ACC to clean up this vegetation area that looks like it's in bad shape. I think there's pictures in the record. SLI said, no, take it out. We don't want it. We want money. We don't want that. Well, Wayne County decision and the federal sea clambers doesn't allow that. You're talking about a citizen suit under RCRA and CERCLA. There is no private remedy for money. TDEC has always had the authority to order cleanup on any hazardous substance site in the state of Tennessee. In fact, the final 2012 order reflects that. When it went up through Chancery Court of Appeals, the court all sided to the Solid Waste Management Act, the Hazardous Waste Management Act, and the Tennessee Water Quality Control Act and said, TDEC has this authority. They've considered all the options and we approve this order. At no time has TDEC not had the authority to give some sort of relief as far as the hazardous substance, but they cannot award any private damages or punitive damages just like you can't in a citizen suit. After the 2012 consent order, we went through the whole process of all the courts. In the meantime, the citizen suit was filed. It was filed six months after SLA started participating in Chancery Court in the initial 2011 consent order. What did the final 2012 order require ACC to do? It required them to divert all storm water away from the landfill, build a berm, dig up the entire landfill, take the engineered cap off as well, bury that all off-site in a lined landfill with no water. Where leachate collection is done, that leachate is shipped off-site and as the experts said in the hearing, remove the source. You remove the source, you clean it up. That's exactly what they did. That order also required a general storm water permit, which is delegated by EPA to TDEC under the NPDES program, which is the 402 permitting program. I think that the SLI has conceded now that the NPDES issue, that was claim number one, is no longer an issue. But claim number two, they assert is still an issue. I believe that goes, Judge Clay, to some of the questions you were talking about as far as, one, ACC since February 17th of 2011 has maintained a general storm water permit. If you look at claim number two, and I pulled it out while we were sitting here to make sure I was right, they specifically assert, and this was a year after, in their complaint, a year after we had our first general permit, that ACC was in violation of the Tennessee rules because Tennessee failed to require ACC to get a general storm water permit for its landfill. And yes, in 2011, they did. In 2011, the landfill was capped, but it was still there. We got a storm water permit. A storm water permit authorized the discharge of all storm water from the site, including the sediment that is at issue. That is the purpose of a storm water permit. To give you some examples, I've only been downtown in Tennessee, and we've got a lot of water like you do. What happens is, when it rains and when you're developing, storm water comes onto your site, it grabs some soil, and it takes it off site. What the storm water permit does is tell you how to control it. You have a SWIP, which is a storm water pollution prevention plan. It tells you how to control that. You can't stop water from going downhill, but you can control how much of it goes. The pace it goes, and how much sediment gets in it. That's the purpose of the general storm water permit. SLI appealed all the cases all the way, as the record shows pretty clearly, through Chancery Court, Court of Appeals twice, Tennessee Supreme Court twice, ultimately up to the U.S. Supreme Court on the state court matter, and they decided not to take it up. Can I understand you correctly that you're saying that Tennessee actually does have the authority to do the section 404 permitting? No. They don't do the 404. You cannot have a general storm water permit, which is the 402 and PDS, and a 404 at the same time for the same activity. Isn't the 404 permitting what is really relevant for purposes of count two? No. Not at all. If you read count two, they say, one, we didn't have the storm water permit. We should have, and oh, by the way, they should have gotten a dredge and fill permit, too. You can't have both. It's prohibited by federal law for the same activity, number one. Number two, the state of Tennessee, believe it or not, is more stringent than the federal government when it comes to the definition of water. All water of the state. It doesn't matter if it's navigable. We don't have to have that conversation when it comes to that for Tennessee. We do for the federal claims, but not for Tennessee. In Tennessee, in order to get a 404 permit from the Corps, you first have to go to the state of Tennessee and get a 401 certification. Then, if you can get the 401 certification, then you can go get the 404 from the Corps. You're saying the 401 certification is more stringent than the 404 that you would get from the Army Corps of Engineers? Absolutely. Okay. Yeah, because it's for all sorts of activities, not just specific activities. It's for all water. The 404 only applies to navigable waters under the federal definition. What the 401 certification does is apply to all waters in the state of Tennessee. Again, the state of Tennessee will never give you a 401 certification if you already have a general stormwater permit, because you can't have both. You can't have both to go get that 404. It's one or the other. TDEC, in the 2012 and the 2011 order, chose the general stormwater permit. They're delegated the authority to determine what kind of NPDES should be applicable, and they did that. Of note, in the 2012 order, there are affluent limits. The fact that SLI doesn't like them doesn't mean that they're not enforceable. That was a conversation you two had back and forth. With regard to that issue on claim number two, they had a general permit. You cannot have both. The claim itself tries to ask for both. Finally, even if you wanted to get the 404, you had to go get a certification from TDEC first. TDEC does have jurisdiction. Their argument is TDEC and the state courts have no jurisdiction whatsoever to make any decisions regarding whether a 404 is required. Absolutely, they do, because the 402 is delegated and the 401 certification is a mandatory prerequisite to getting it. The point of that whole conversation is the state had jurisdiction. A decision was made. The courts upheld the board's final order. It was final adjudication. Therefore, the district court was right. There's no subject matter jurisdiction on that. I do think that the district court did a great job on that demarcation line of the post and pre-consent order claims. As Judge Clay mentioned, first, there is no landfill in that location. All the topsoil was removed. If you look at the claims as they're written, it was all about what's leaching from the landfill that existed and the mismanagement of the landfill over the time that it was in operation and post-closure care. None of that applies anymore because the landfill was moved. The 2012 order required removal of all the waste and all the soil above it. ACC was given six years. They did it in four. To say there was no diligent prosecution is a stretch, especially when you are required to dig up a landfill by the same entity that permitted it. Could there be new claims resulting from what's still going on after the landfill was moved to the new site? Yes. SLI has filed a claim on that. That's their third lawsuit. In 2018, they filed a third violation of this general stormwater permit that they say we didn't have at the time. That was filed, again, in the Middle District. There was an NOI for that, so they've met that prerequisite. To the extent there are any, yes. Of course, every citizen has the right. That's not to say that they would prevail and that's not to say that it's really ongoing. I will tell you that the water in Sugar Creek has met Tennessee water quality criteria for at least the past three or four years. COVID years makes me forget. Finally, I didn't even get to talk about the claim preclusion, but based on the DP Marina, which is a Tennessee case, and this court's previous holdings in Ellis, which really lays it out, we think all the pre-consent order claims were all wrapped up with a nice little tidy bow and a $400,000 civil penalty against ACC. That result should preclude, in toto, all of the pre-consent claims. What about the post-2012 consent order claims? The post-consent order claims are not properly before this court, and the judge was right. I don't mean procedurally, exactly. I mean the substance of those claims and how they either, because I understood Starling to be saying, well, they're the same claims and they've just never been resolved. The district court said, if you've got new claims here, you've got to file notice and a new lawsuit. Real quickly, to what extent are they the same claims? They can't be the same claims. There's no landfill. There's no violation of any failure to have a general stormwater permit. Whether or not SLI agrees with what the permit is, is another thing. They could certainly assert that we're in violation of our permit, but what they're really wanting to do is challenge TX authority and their choice of permitting and then their choice of how they're regulating the discharge. Which is essentially a challenge to the final order. Correct. Thank you. Thank you very much for your argument. Thank you. Your Honor, just a few quick points in rebuttal. First of all, Your Honor, the stormwater permit is a red herring in this case. It is a temporal permit connected with the construction of the new landfill. It is not an indefinite blessing in time or scope to continue to discharge I heard counsel say that we conceded that count one is no longer at issue. That is not our position. Our position is the same today as it is in our briefs, which is there is partial preclusive effect on counts one, three, and four of the complaint, based on the responded to questions about the movement of the landfill and how that fits into the analysis. Judge Batchelder, your question was, could there still be problems from the original landfill? The answer is yes, and we believe that is absolutely what the evidence shows. The district court predominated any analysis of that evidence that we believe is pretty clear by reaching the result that it did. Based on what the district court did, it denied any opportunity to consider whether the original landfill is still causing a problem because of the way it analyzed this case. On the issue of whether these claims are the same or new claims, I would make two points, your honors. The first is that the claims are fundamentally claims for violations of federal law. In some instances, for the pollution above the applicable NPDES limits. In other instances, for example, for the discharge of settlement. Those issues are ongoing from the time that we filed the lawsuit and frankly decades before, and they continue. The evidence shows they continue to this day. Nothing that TDEC has done, which by the way has never been an enforcement action in a court, nothing that TDEC has done has required or resulted in ACC being in compliance with federal law. So we have these federal law violations that were clear enough that we moved for summary judgment on them with these federal law violations that remain and have been in place for decades. The quantum of the changed for decades. At the end of the day, your honors, the point of environmental citizen suits is for citizens to be able to step up when the applicable agencies have not or will not or cannot. And that is exactly what has happened here, your honors. So we would ask that you reverse in part and allow SLLI a chance to prove up the claims that survived after partial preclusion effect from the 2012 order. All right. Thank you very much for your arguments. Thank you, your honors. This is submitted and you will hear from us in due course.